UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER TODD WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>LAWRENCE LIVERMORE NATIONAL SECURITY, LLC,<br><br>    Defendant. | Case No. 20-cv-03510-JCS<br><br>**ORDER REGARDING MOTION TO STRIKE, MOTION FOR PROTECTIVE ORDER, AND ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 39, 49, 50, 73 |

## I.  INTRODUCTION

Plaintiff Peter Todd Williams, pro se, asserts a claim against his former employer Defendant Lawrence Livermore National Security, LLC ("LLNS") for retaliation in violation of the False Claims Act ("FCA").  Based on concerns regarding confidentiality and the logistical challenges of litigating claims involving sensitive information, LLNS moves to strike certain allegations of Williams's complaint under Rule 12(f) and for a protective order governing discovery.  Williams opposes aspects of both motions.  The Court held a hearing on December 10, 2021.  For the reasons discussed below, the motion for a protective order is GRANTED with one modification, and the motion to strike is GRANTED.[1]

LLNS has also shown compelling reasons to seal a non-public document attached to Williams's opposition brief and a narrowly-tailored redaction to that brief addressing that document.  LLNS's administrative motion to maintain that material under seal (dkt. 73) is GRANTED.  Based on LLNS's stated non-opposition to the public filing of Williams's September 3, 2021 case management statement and his original and amended complaints, Williams's motion

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

to file his case management under seal (dkt. 39) is DENIED, and those documents are hereby UNSEALED.

## II. WILLIAMS'S ALLEGATIONS

For simplicity, this section summarizes Williams's allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed.

Williams was employed by LLNS at Lawrence Livermore National Laboratory ("LLNL") as a design physicist, modeling the corner-turning behavior of certain explosives. 1st Am. Compl. ("FAC," dkt. 17) ¶¶ 4, 24. In allegations that LLNS moves to strike, Williams states that his work related to nuclear weapons—specifically, ensuring that the W80-4 warhead would detonate reliably. *E.g.*, *id.* ¶¶ 25–32. His early performance reviews were excellent. *Id.* ¶ 33.

One of Williams's colleagues doing similar work, Peter Vitello, developed models that had received acclaim within LLNS for the performance of one of the explosives at issue. *Id.* ¶¶ 36–38. When Williams examined Vitello's models, he determined that they rested on "jagged" rate law curves that seemed unlikely to be correct., particularly given the limited experimental background on which the models were based. *Id.* ¶¶ 39–43. Vitello concealed those underlying rate curves, and the fact that he had multiple different models, cherry-picking only the model that best fit each experiment even though each described the same fundamental principles that should have been consistent between experiments. *Id.* ¶¶ 51–55. When Williams exposed Vitello's rate curves, other colleagues were shocked, and Vitello was embarrassed and angry. *Id.* ¶¶ 57, 63, 64.

Williams was eventually fired by LLNS, purportedly for lack of productivity and failure to effectively use existing models and analysis tools. *Id.* ¶¶ 87, 90, 95. Williams alleges those reasons were pretext, as he in fact performed well and was recognized by colleagues for doing so. *See id.* ¶¶ 93–94, 97.[2] LLNS also stated that Williams had "difficulty in achieving an effective balance between doing what was request, and challenging the underlying approach," which Williams takes as indicating that he was fired for exposing the flaws in Vitello's work. *See id.*

---

[2] Williams asserts that LLNS's stated reasons for firing him suggest age discrimination, but has not asserted a claim for such discrimination. *See* FAC ¶¶ 98–99. Similarly, Williams asserts that workplace relations at LLNL were generally toxic, but the only claim he asserts is for retaliation in violation of the FCA.

¶ 103. Williams believes that concealment of those flaws allowed LLNS to obtain additional federal funds and thus constituted a violation of the FCA, or at least that Williams reasonably believed it was such a violation. He therefore asserts that his firing was retaliation in violation of that statute.

### III.     MOTION FOR PROTECTIVE ORDER

#### A.     Arguments

LLNS seeks a protective order that, in addition to the standard terms of this Court's model protective order, would bar discovery into classified information and allow witnesses who have access to classified information to decline to answer "deposition questions that implicate sensitive information in areas that are subject to classification." Mot. for Protective Order (dkt. 50) at 2; Def.'s Proposed Protective Order (dkt. 50-4) § 14.2. LLNS also seeks additional time to respond to discovery requests and to address confidentiality designations in order to allow it to confer with relevant stakeholders, and a provision clarifying "that 'CONFIDENTIAL' information includes research information and information that implicates sensitive subject areas." Mot. for Protective Order at 2–3. LLNS contends that such provisions are appropriate to allow LLNS and the relevant witnesses to comply with laws, regulations, and other rules prohibiting the disclosure of classified information, whether information is classified, the technical accuracy of classified information in the public record, or comments on unclassified information related to sensitive subject areas that could tend to reveal by implication classified information. Mot. for Protective Order at 3–5.

Williams does not oppose entry of the model protective order or allowing the extra time LLNS seeks, and disclaims any intent or need to discover classified information. Opp'n to Protective Order (dkt. 53). He objects, however, to the provision including "research information" in the definition of confidential information, arguing that LLNS routinely publishes research information. *Id.* at 2. He also objects to allowing witnesses to decline to answer questions regarding "sensitive information in subject areas that are subject to classification, such as subject areas related to the federal nuclear weapons program or nuclear weapons," arguing that the standard is vague and will be abused to cover "any and all explosives theory and models." *Id.* at 3. Williams's proposed protective order would use the standard definition of confidential information

as information that qualifies for protection under Rule 26(c) of the Federal Rules of Civil Procedure, and would allow witnesses who have access to classified information to decline to answer "questions that implicate classified information" and "questions regarding nuclear weapons." Pl.'s Proposed Protective Order (dkt. 53-1) §§ 2.2, 14.2.

LLNS clarifies in its reply that it does not seek to treat *all* research information as confidential, only "*confidential* research information." Reply re Protective Order (dkt. 64) at 1–2. LLNS also argues that limiting witnesses' ability to decline to answer questions to those implicating actual classified information or nuclear weapons, without also covering other "sensitive information in subject areas that are subject to classification," would place witnesses in untenable situations where their obligations in depositions would conflict with "rules, regulations and statutes governing sensitive national security information." *Id.* at 2–3.

### B. Analysis

District courts have discretion to enter protective orders governing discovery, including for the protection of confidential information:

> [P]ursuant to Federal of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The district court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-md-02843-VC (JSC), 2021 WL 3209711, at *3 (N.D. Cal. July 29, 2021). Protective orders may also "specify[] terms . . . for the disclosure or discovery," "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters," among other possible terms. Fed. R. Civ. P. 26(c)(1).

Here, the parties agree on most terms of a protective order. They differ as to the definition of "confidential" information—which may be produced in discovery, but is subject to rules regarding further disclosure and filing in the public record—and as to a provision allowing witnesses with access to classified information to decline to answer certain questions.

#### 1.  Confidential Information

With respect to the first dispute, LLNS proposes the following definition:

> 2.2. "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), including but not limited to confidential research information and sensitive information implicating national security.

Def.'s Proposed Protective Order § 2.2. In response, Williams proposes the following, which mirrors the Court's model protective order:

> 2.2 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

Pl.'s Proposed Protective Order § 2.2.

Rule 26(c)(1)(G) specifically allows for protection of "confidential research . . . information." Accordingly, while the specific inclusion of "confidential research information" may be redundant to the basic definition of material subject to protection under Rule 26(c), it is entirely consistent with that rule. The Court therefore GRANTS LLNS's motion as to that provision. That said, the Court does not suggest that *all* research information is subject to designation. In the event of a dispute, the designating party (presumably LLNS) will bear the burden of persuasion to show that the information at issue is in fact "confidential" and subject to protection under Rule 26(c). *See* Def.'s Proposed Protective Order § 6.3; Pl.'s Proposed Protective Order § 6.3. Research information that LLNS has publicized or has not taken steps to keep confidential would not be protected.

Turning to "sensitive information implicating national security," while Williams does not include that language in his proposal, he does not specifically object to it and has offered no argument that any such material would not warrant protection. The Court therefore adopts LLNS's proposed definition of confidential information.

The parties are reminded that a confidentiality designation does not relieve the designating party of its burden to show either good cause or compelling reasons (as applicable to the particular context of a filing) for filing material under seal in the record of the case.

### 2. Protection from Deposition Questions

The parties agree that witnesses with access to confidential information should be afforded

at least some right to decline to answer deposition questions implicating their obligations to protect that information. They offer the following competing provisions defining that right:

> 14.2. No witness who has access to classified information shall be required to respond to deposition questions that implicate classified information or sensitive information in subject areas that are subject to classification, such as subject areas related to the federal nuclear weapons program or nuclear weapons.

Def.'s Proposed Protective Order § 14.2.

> 14.2 No witness who has access to classified information shall be required to respond to deposition questions that implicate classified information, nor to questions regarding nuclear weapons.

Pl.'s Proposed Protective Order § 14.2.

Both parties' provisions appear to be intended to protect witnesses from violating their obligations under applicable laws, regulations, and rules regarding the protection of classified information, which sweep somewhat more broadly than merely prohibiting direct disclosure of such information. *See, e.g.*, 10 C.F.R. § 1045.65 (prohibiting comment on the technical accuracy or classification status of certain information published in open literature). Under either party's proposal, any dispute as to a witness's refusal to answer a question would likely turn on whether the witness's obligations under those rules prohibited them from doing so.

The parties' agreement that witnesses with access to classified information need not answer questions regarding nuclear weapons provides a clear standard that might in some circumstances avoid the need for technical parsing of applicable rules, and the Court adopts that provision. The disputed clause regarding other "sensitive information in subject areas that are subject to classification," however, adds little clarity beyond the rules that LLNS asserts it is intended to protect. While any such "sensitive information" is likely entitled to a designation as confidential, LLNS has not shown that *all* sensitive information related to "subject areas that are subject to classification" is wholly prohibited from disclosure, and Williams is correct that an overly broad interpretation of such "subject areas" could encompass virtually any question about his work at LLNL. To avoid any unintended implication that the protective order imposes more stringent limitations on Williams's ability to obtain discovery than is required by those rules, or conversely that witnesses might be required to answer questions that conflict with their obligations

6

under those rules, the Court adopts the following version of section 14.2:

> 14.2 No witness who has access to classified information shall be required to respond to deposition questions that implicate classified information, to questions regarding nuclear weapons, or to questions where a response would violate the witness's obligations under applicable statutes, regulations, or rules regarding the protection of classified information.

Any dispute as to whether a witness has improperly refused to answer questions may be raised in a motion to compel.

### IV.   MOTION TO STRIKE

#### A.   Arguments

LLNS moves to strike certain allegations of Williams's complaint that it contends "stray[] far beyond the scope" of Williams's retaliation claim, and instead consist of "far-ranging and speculative allegations concerning the design and testing of nuclear weapons, the federal nuclear weapons program, the United States Stockpile Stewardship Program, and efforts to defend against terrorism." Mot. to Strike (dkt. 49) at 3. LLNS argues that responding to such allegations would create tension with its obligations regarding classified information, *see id.* at 5–6, and identifies five categories of allegations it seeks to strike:

> Category 1: Allegations concerning the alleged practical application of Plaintiff's and Dr. Vitello's computational modeling research to nuclear weapons, including allegations that Dr. Vitello's allegedly faulty methodology may ultimately result in wasted costs for the design of the W80-4 nuclear warhead: FAC ¶¶ 12, 16, 20, 23–25, 30, 32, 49, 54, 66–67.
>
> Category 2: Historical and background allegations concerning the United States' Stockpile Stewardship Program and alleged problems with the W80 and B61 nuclear weapons: FAC ¶¶ 15–17, 19, 23, 25–32.
>
> Category 3: Other allegations that explicitly or implicitly connect LLNL's work generally to nuclear weapons or defense against terrorism: FAC ¶ 5, 21, 36, 68, 76- 77, 83–84.
>
> Category 4: Allegations regarding the DOE/NNSA's performance evaluation of LLNL and LLNL's self-assessment with respect to alleged work concerning nuclear weapons: FAC ¶ 105.
>
> Category 5: An exhibit consisting of a written disclosure statement Plaintiff provided to the Government regarding his complaint, which repeats and elaborates on the allegations identified in Categories 1

7

through 4 above regarding sensitive subject areas: Exhibit 800 to the FAC.

*Id.* at 7–8.

According to LLNS, those allegations "have nothing to do with the alleged whistleblowing activity or LLNS's alleged response with respect to Plaintiff's employment," and the disclosure statement included as Exhibit 800 is a "vestige of a claim that is no longer in the case"—a qui tam claim that Williams withdrew after he was informed he could not bring such a claim pro se, and which the Court later denied Williams leave to reassert. *See id.* at 9–10. LLNS asserts that it might not be able to respond to the allegations at issue because it is prohibited by Department of Energy policies from commenting on sensitive subject areas that contain potentially classified information, even where the information at issue is itself not classified but might contribute to "the 'mosaic effect,' which occurs when unclassified information can be pieced together to reveal classified information." *Id.* at 11–13.

Williams consents to striking some of the allegations at issue, but opposes striking many of them. Opp'n to Mot. to Strike (dkt. 68) at 5–8. He apologizes for the length of his complaint, noting that he mistakenly believed a complaint must include "every single item of evidence that might bear on the matter," but argues that length alone is not a basis to strike allegations. *Id.* at 9–10. He contends that his allegations are not speculative but instead based on his experience and expertise, and that even if they were speculative, that is also not a basis to strike them. *Id.* at 10–11. As for relevance, Williams argues that the alleged relationship Vitello's work had to the nuclear weapons program is relevant to showing that it was material to LLNS's government contracts, and thus that Williams calling Vitello's purported errors and concealment to light was activity protected from retaliation under the FCA. *Id.* at 13–15. He contends that LLNS's invocation of a "no comment" policy regarding classified information presents a "vague and fuzzy line that is clearly open to expansive interpretation," and that LLNS is ultimately at fault for this dispute because it hired Williams to perform work related to nuclear weapons without first granting him a security clearance. *Id.* at 15–17. Williams also argues that his complaint should be treated leniently in light of his pro se status, that caselaw cited by LLNS is inapposite, and that LLNS has not met its burden to show that its motion should be granted. *Id.* at 18–24.

LLNS argues in its reply that the actual significance of Vitello's work is not relevant because Williams's retaliation claim does not require a showing of actual fraud on the government and instead requires only that Williams reasonably believed he was engaged in protected activity, Reply re Mot. to Strike (dkt. 72) at 2–3, that the alleged connection to nuclear weapons programs would be overly prejudicial to a jury, *id.* at 4, and that the burden of responding to these allegations in light of LLNS's obligations regarding classified information is significant, *id.* at 4–7.

### B.  Analysis

A party may move the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). A motion to strike can be appropriate "when a defendant cannot reasonably be expected to frame a responsive pleading or to defend against those portions of the complaint," or "if defendants would suffer undue prejudice" if the material were not stricken. *Fed. Deposit Ins. Corp. v. Wise*, 758 F. Supp. 1414, 1420 (D. Colo. 1991). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, No. 13-cv-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at 973).

The question of whether Williams's allegations are "immaterial" or "impertinent" implicates the nature of his FCA retaliation claim. "An employee must prove three elements in a [31 U.S.C.] § 3730(h) retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002).

"[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Id.*

The Court agrees with LLNS that the portions of the complaint it seeks to strike are immaterial, in the very limited sense that they are not *necessary* to Williams's complaint. Even without the allegations at issue, Williams has sufficiently alleged—at least for the purpose of the liberal federal pleading standard—that he reasonably and in good faith believed reporting Vitello's errors was protected under the FCA, based on his belief that Vitello's work supported LLNS's requests for government funding, and that LLNS fired him because of that conduct. LLNS appears to concede as much, and stated at the hearing that it does not intend to file a motion to dismiss Williams's complaint.

The fact that not all of Williams's allegations are necessary is not in itself sufficient reason to strike them. *See Blevins v. Piatt*, No. CV ELH-15-1551, 2015 WL 7878504, at *6 (D. Md. Dec. 4, 2015) ("[I]nclusion of more facts than needed to state a claim is not grounds to grant a motion to strike."). Combined with prejudice to the defendant, however, the lack of need for such allegations can support a district court deciding as a matter of discretion to strike the allegations. Some courts have suggested that motions to strike impertinent material should *only* be granted where "no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, *and* that to permit the allegations to stand would result in prejudice to the movant." *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) (emphasis added). This Court is aware of no binding precedent so holding. Other courts have stated that motions to strike "will generally be denied unless the material in question bears no possible relation to the matter at issue *or* the moving party shows that it will be prejudiced by its inclusion." *Gov't Guarantee Fund v. Hyatt Corp.*, 166 F.R.D. 321, 324 (D.V.I. Apr. 10, 1996) (emphasis added). The latter view is more consistent with Rule 12(f)'s discretionary nature and its purpose of streamlining litigation. If an allegation is not necessary and its inclusion in the complaint imposes significant prejudice, striking the allegation may be appropriate.

Here, LLNS faces prejudice in that it, by law, it cannot "confirm or expand upon the

classification status or technical accuracy of information in the open literature that is [subject to certain classifications] or suspected to [subject to those classifications]." 10 C.F.R. § 1045.65. Williams's complaint includes technical descriptions of nuclear weapons, a topic that generally falls within those restrictions. *See* 10 C.F.R. § 1045.30 (defining "Restricted Data (RD)," one of the categories that is subject to § 1045.65, as including "all data concerning the design, manufacture, or utilization of atomic weapons . . . except for data declassified or removed from the RD category"). Under Rule 8(b)(1)(B), LLNS must "admit or deny the allegations asserted against it" in Williams's complaint. Allowing Williams's unnecessary allegations regarding nuclear weapon design and other inherently sensitive subjects to stand would needlessly create conflict between LLNS's obligation to answer under Rule 8 and its obligation to refrain from commenting under § 1045.65 and similar policies.[3]

      Portions of LLNS's motion address seemingly innocuous material, and may well be overbroad. *See, e.g.*, FAC ¶ 21 (where LLNS seeks to strike the sentence "10 CFR 830 addresses 'Nuclear Safety Management,'" which merely states the title of that part of the Code of Federal Regulations, and LLNS does not seek to strike a preceding citation to Part 830). But since LLNS has for the most part raised legitimate and serious concerns, and granting the motion to strike will lay this immediate dispute to rest and allow the case to move forward without impairing Williams's ability to pursue his claim in any practical way, simply granting the motion serves Rule 12(f)'s purpose of streamlining efficient litigation, while attempting to parse a fine line of which allegations at issue impose sufficient prejudice on LLNS would not. The motion to strike is therefore GRANTED as to all portions of the complaint LLNS seeks to strike, and LLNS shall answer Williams's complaint as if the stricken portions were not included.

      This order striking allegations should not be taken as excluding all evidence related to the stricken material from discovery or from presentation at trial. Even without the stricken

---

[3] While Williams asserts that he "does not care about the location, classified nature, or technical accuracy of classified information that appears in the open literature, because the open literature that we are discussing here is almost entirely literature placed in the open *by the Defendant itself*," Opp'n to Mot. to Strike at 16, the fact remains that Rule 8 would effectively require LLNS to confirm or deny Williams's characterizations of potentially classified material.

allegations, Williams's complaint presents a theory that Vitello's work was important to LLNS's government funding, and that that Williams was fired for exposing what he reasonably believed to be errors in that work that imperiled that funding. The nature of Vitello's work, at least as Williams actually understood it or a reasonable employee in Williams's position would have understood it, may be relevant to the reasonableness of Williams's belief that a violation of the FCA had occurred. The actual importance of Vitello's work to LLNS's funding may also bear on an inference as to whether Williams exposing its purported flaws was the reason he was fired.

Williams may face hurdles in pursuing discovery into those matters based on the protective order described above, but to the extent he is able to do so in a manner consistent with the protective order, the Court's decision to strike certain allegations from his complaint does not preclude such discovery. Similarly, while LLNS foreshadows a dispute about whether the prejudice of presenting a jury with information about nuclear weapons would outweigh its probative value under Rule 403 of the Federal Rules of Evidence, that is not a basis to impose a broad limitation on discovery, at least at the pleading stage before any dispute regarding specific discovery requests has arisen, while concerns about the burdens of production and relevance of information Williams might seek remain speculative.

## V. CONCLUSION

For the reasons discussed above, LLNS's motion for a protective order is GRANTED in part, and the Court will separately enter a protective order consistent with this order and the undisputed portions of the parties' proposals. LLNS's motion to strike is GRANTED, and LLNS shall disregard the stricken portions of Williams's complaint for the purpose of its answer.

**IT IS SO ORDERED.**

Dated: December 14, 2021

JOSEPH C. SPERO
Chief Magistrate Judge